IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PPL SERVICES CORPORATION, | : | |
|         Plaintiff, | : | |
|         v. | : | CIVIL ACTION |
| | : | |
| INTERNATIONAL BROTHERHOODS OF | : | |
| ELECTRICAL WORKERS LOCAL 1600, | : | NO. 12-7154 |
|         Defendant. | : | |

MEMORANDUM OPINION

**Pratter, J.**                                                                                              June 10, 2013

### I.   INTRODUCTION

This labor relations dispute presents an invitation to the Court to intrude upon the precarious balance supposedly struck among an employer, PPL Services Corporation ("PPL"), a union, International Brotherhood of Electrical Workers Local 1600 ("Union"), an employee union member, Joseph Gotzon, and an arbitrator who has revised certain discipline meted out against Mr. Gotzon by PPL.

Specifically, pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (Doc No. 1), PPL contends that the arbitrator exceeded the scope of the authority granted to him under the collective bargaining agreement ("CBA") between PPL and the Union to determine whether just cause existed for the discipline imposed by PPL on Mr. Gotzon. On November 28, 2012, the arbitrator issued an Award that modified the discipline imposed on Mr. Gotzon from five-days' suspension and two-years' probation, to a two-day suspension followed by a six-month probation. PPL now seeks to vacate this Award.

The Union moves to dismiss PPL's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. This Court has

jurisdiction to review the Arbitrator's determination under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.  For the reasons that follow, the Court concludes that the motion to dismiss should be granted.

## II.     BACKGROUND

PPL is an energy and utility company located in Allentown, PA.  The Union is a labor organization representing certain PPL employees, known as "bargaining unit members," for collective bargaining purposes with their employer.  PPL and the Union are, and have been, parties to a CBA that was in effect at all times relevant to this case.  On April 10, 2011, the Union filed a grievance alleging that PPL had breached the terms of the CBA by suspending bargaining unit member Mr. Gotzon for five days for insubordination.

The Grievant, Mr. Gotzon, worked at PPL's Lehigh Service Center ("Service Center") as a "troubleman," a position which required him to respond to power service problems.  On July 27, 2011, PPL directed Mr. Gotzon to respond to a "wire down" call.  Mr. Gotzon accepted this assignment, but rather than responding to the call, he drove halfway to the site, and then returned to the Service Center with approximately fifteen minutes left in his shift.  When he returned, Mr. Gotzon coded his activity regarding the "wire down" call as "NTLS" (no time left in shift) on PPL's electronic system for monitoring service calls.  Mr. Gotzon then asked his supervisor whether there was anything left for him to do before his shift ended, to which his supervisor responded that there was no further work for Mr. Gotzon, and thanked Mr. Gotzon for completing the call.  Upon discovering that Mr. Gotzon had in fact failed to respond to the "wire down" call, or even visit the site of the call, PPL dispatched another technician to handle it.

The parties' CBA contains a grievance and arbitration procedure that allows the Union to file grievances concerning any dispute arising between the parties under the agreement. The CBA provides, in relevant part:

> The Grievance Procedure . . . shall be applicable to complaints regarding the meaning, application, interpretation or administration of any provision of this Agreement limiting the following functions of Management, which are the only ones limited by this Agreement; namely, the right to: . . . . discipline employees for misconduct on the job or other violation of rules and discharge employees for just cause.

Compl. ¶ 8 (quoting CBA, Art II, § 5A). The CBA does not define the "just cause" that is a prerequisite to imposing discipline for employee misconduct or other violation of work rules. With respect to grievances that proceed to arbitration, the CBA provides that the "arbitrator shall have no power to add to, or subtract from, or modify any of the terms and provisions of this Agreement, or Agreements made supplementary hereto," Compl. Ex. A, Art III, § 7(A)(2), but sets forth no explicit directions or limitations regarding an arbitrator's authority to craft a remedy.

At the arbitration hearing held on August 22, 2012, the parties stipulated to the following issue for resolution: "Was the discipline imposed on the Grievant, Joseph Gotzon, for just cause? If not, what shall the remedy be?" Compl. Ex. C, at 2. The Arbitrator rephrased the issue as "whether the Company has met its burden of showing it had just cause to impose a five-day suspension and two-years of probation on the Grievant for failing to complete the 'wire down' assignment on July 27, 2011." Compl. Ex. C, at 14. PPL argued that it had just cause to discipline Mr. Gotzon because he had unilaterally decided not to finish an assignment that his supervisor had specifically directed him to complete, and had misrepresented his completion of the call to his supervisor. Further, PPL argued that troublemen like Mr. Gotzon have no right to decide when their workdays end, even if responding to a call will require them to work overtime.

3

The Union contended that because the "wire down" assignment was classified as a "scrap," or low-priority, call, Mr. Gotzon followed the standard practice of declining to start working on the call because it would require overtime hours to complete. The Union further argued that the five-day suspension imposed was excessive because PPL's Responsible Behavior Program ("RBP"), which governs employee discipline, calls for progressive discipline steps, rather than immediate suspension, and Mr. Gotzon had no prior record of discipline.

On November 29, 2012, the Arbitrator issued an Award sustaining the grievance in part and denying it in part. Based upon the testimony and evidence presented at the arbitration hearing, the Arbitrator concluded that "the Company did not have just cause to impose a five-day suspension and a two-year probation on the Grievant for failing to complete an assignment." Compl. Ex. C, at 19. However, because the Arbitrator found that just cause existed to discipline Mr. Gotzon for his insubordination, the Arbitrator issued a remedy that reduced the duration of the discipline to a two-day suspension and a six-month probation. In reaching this conclusion, the Arbitrator interpreted "just cause" in the parties' CBA to mean "whether the discipline imposed in this case was reasonable." Compl. Ex. C, p. 17. The Arbitrator determined that, while troublemen may routinely decline to start work on low-priority assignments when there is insufficient time to complete the call before the end of their shifts, Mr. Gotzon had a duty to complete the "wire down" job because his supervisor had specifically directed him to do so. However, the Arbitrator also found that Mr. Gotzon's supervisor did not clearly instruct Mr. Gotzon to work beyond the end of his shift in order to complete the assignment. In determining the appropriate remedy, the Arbitrator concluded that the "lack of clarity surrounding the Company's overtime policies with respect to completing 'scrap' jobs, in conjunction with the 'routine' procedure of allowing employees to turn back 'NTLS,' warrants some mitigation of the

4

Grievant's penalty."  Compl. Ex. C, at 19.  Additionally, the Arbitrator found that Mr. Gotzon's failure to respond to the call did not create any public safety concerns.  The Arbitrator noted the absence of specific language in the RBP authorizing the penalty imposed on Mr. Gotzon for his type of misconduct.  The Arbitrator also considered that Mr. Gotzon was a long-time employee with no record of discipline prior to this incident.

### III.    DISCUSSION

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters.  The Court "must only consider those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAir, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").[1]  The Court must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party.  *See Rocks v. City of Phila.*, 868 F. 2d 644, 645 (3d Cir. 1989).  However, the Court need not accept the plaintiff's "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F. 3d 173, 183-84 (3d Cir. 2000) (citations and quotations omitted), or the plaintiff's

---

[1] Here, PPL included as exhibits to its Complaint a copy of the CBA, copies of the briefs submitted to the Arbitrator, and a copy of the Award upon which its Complaint is based, and thus, the Court may properly consider these documents in analyzing the Union's Motion to Dismiss.

"bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations and quotations omitted).

The scope of judicial review of arbitration awards is extremely narrow. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987); *Arco-Polymers, Inc. v. Local 8-74*, 671 F.2d 752, 754 (3d Cir. 1982). A court must enforce an arbitration award if the "award 'draws its essence from the collective bargaining agreement,' and is not merely '[the arbitrator's] own brand of industrial justice.'" *Id.* (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). An arbitrator's award draws its essence from the CBA "if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention." *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969) (internal quotation marks omitted); *see also Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 280 (3d Cir. 2004). Further, where a court finds some support in the record for the arbitrator's factual findings, "the inquiry is over" with respect to the court's review of those findings. *Tanoma Mining Co., Inc. v. Local Union No. 1269, United Mine Workers of Am.*, 896 F.2d 745, 748 (3d Cir. 1990).

Nevertheless, courts are "neither entitled nor encouraged to simply 'rubber stamp' the interpretations and decisions of arbitrators." *Matteson v. Ryder Sys., Inc.*, 99 F.3d 108, 113 (3d Cir. 1996). Thus, a district court may vacate an award if it appears that the arbitrator has exceeded the bounds of his or her authority. *Id.* at 112 (citing *United Steelworkers*, 363 U.S. at 597-98. Courts accord arbitrators significant deference in interpreting the scope of the parties' submission in arbitration, but an arbitrator has the authority to decide only the issues that the parties have actually submitted. *Id.* at 112-13 (citing *United Parcel Serv. v. Int'l Bhd. of*

6

*Teamsters, Chauffers, Warehousemen & Helpers of Am., Local Union No. 430*, 55 F.3d 138, 142 (3d Cir. 1995); *United Steelworkers*, 363 U.S. at 598). It is within the court's province to review an arbitrator's interpretation of the parties' submission. *Id.* at 113 (citing *Mobil Oil Corp. v. Indep. Oil Workers Union*, 679 F.2d 299, 302 (3d Cir. 1982)).

PPL contends that the Award does not "draw its essence" from the CBA because the Arbitrator's decision exceeded the scope of his authority under the CBA to determine only whether "just cause" existed for PPL to impose discipline of a five-day suspension and two-year probation on Mr. Gotzon.[2] Compl. ¶ 17. Therefore, adhering to a certain purity of position, PPL argues that the Arbitrator's analysis should have concluded with the determination that no "just cause" existed for PPL's imposed discipline. PPL contends that by proceeding to issue a remedy that modified the discipline imposed on Mr. Gotzon, the Arbitrator ignored the CBA, which prohibits an arbitrator from adding to, subtracting from, or modifying the terms of the CBA. Compl. ¶ 17.

The Union argues that the Arbitrator acted well within the scope of the parties' submission to determine whether "just cause" existed for the discipline imposed, and to determine what remedy should apply if there was no "just cause" for the specific discipline. The Union contends that the Arbitrator did not exceed the scope of his authority by concluding that

---

[2] PPL also raises two additional objections to the Arbitrator's decision. First, PPL asserts a notice issue, contending that the record before the Arbitrator did not support the Award because the parties presented no evidence as to possible alternate forms of discipline. PPL argues that it received no notice that reducing the length of the suspension and probation period was a potential remedy at arbitration. The Union responds that PPL had notice of the Arbitrator's potential remedy of modified discipline in the Union's post-hearing brief, which the Union filed before the Arbitrator issued the Award, and to which PPL did not respond. Second, PPL argues that the Arbitrator's decision to reduce the duration of Mr. Gotzon's suspension impacted the progressive discipline factors which PPL later used to terminate Mr. Gotzon's employment. In response, the Union argues that the arbitration hearing solely addressed Mr. Gotzon's behavior on July 27, 2011, and thus, any evidence of Mr. Gotzon's future misconduct was not before the Arbitrator. The Court need not resolve these issues to conclude that vacating the Award is inappropriate here, for the reasons that follow.

"just cause" did not exist for PPL's imposed discipline, and by issuing a remedy that suspended Mr. Gotzon for two days, with a six-month probation. Further, the Union argues that the Arbitrator was clearly within the authority granted to him to interpret the parties' CBA, which did not define the phrase "just cause," and which did not impose any limitations on an arbitrator's authority to fashion a remedy.[3]

Even drawing all reasonable inferences in PPL's favor, the Arbitrator did not exceed the scope of his authority to determine the issue submitted by the parties for arbitration. The parties' stipulation explicitly requested that the Arbitrator determine not only whether "just cause" existed for the discipline imposed on Mr. Gotzon, but also what remedy would be appropriate if "just cause" did not exist. Thus, it was well within the scope of the parties' submission for the Arbitrator to determine not only whether "just cause" existed for the specific discipline imposed on Mr. Gotzon, but also whether to issue a remedy that imposed an appropriate level of discipline. *Matteson*, 99 F.3d at 112.

Moreover, the Arbitrator acted well within the scope of his authority to interpret ambiguities in the parties' CBA. Where a contractual ambiguity exists, it is within the province of the arbitrator to interpret the ambiguity. *See United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 380-81 (3d Cir. 1995). Where parties have neglected to define "just cause" in their CBA, courts have held that an arbitrator may exercise his or her discretion to interpret the meaning of "just cause" in a "just cause" provision, or a synonymous provision, of a CBA. *See id.* at 380. Here, the Arbitrator interpreted "just cause" to mean whether the discipline

---

[3] The Union further notes that PPL has failed to allege that any past practice or supplemental agreement, outside of the terms of the CBA, exists which would demonstrate that the Arbitrator's decision contradicts the terms of the CBA.

imposed on Mr. Gotzon was reasonable. Further, given that the parties' CBA did not explicitly guide or limit the Arbitrator with respect to devising a remedy, the Arbitrator did not exceed the scope of his authority under the CBA to issue a remedy that modified the discipline to accord with his interpretation of "just cause."[4] *See Wilkes Barre Hosp. Co.*, 453 F. App'x 258. 260-61 (3d Cir. 2011); *Super Tire Eng'g Co. v. Teamsters Local Union No. 676*, 721 F.2d 121, 123-25 (3d Cir. 1983) (concluding that arbitrator properly interpreted "just cause" to require reduction of the discipline imposed from termination to four-months suspension); *Osram Sylvania Prods. v. Int'l Bhd. of Teamsters Local Union No. 773*, No. 03-5706, 2004 U.S. Dist. LEXIS 7204, at *2, 8-13 (E.D. Pa. Apr. 5, 2004) (upholding arbitration award reducing termination to five-day suspension); *N. Phila. Health Sys. v. Dist. 1199C*, No. 02-194, 2002 U.S. Dist. LEXIS 22267, at *1, 6, 8 (E.D. Pa. Oct. 24, 2002) (upholding arbitration award reducing discharge to suspension). Rather than improperly supplementing, subtracting from, or modifying the terms of the CBA, as PPL contends, the Arbitrator's decision properly interpreted the terms of the CBA, within the parameters of his authority, to reflect that discipline was warranted, but that PPL's imposed penalty was excessive under the circumstances.[5]

---

[4] PPL attempts to draw a distinction between the situation here, in which the arbitrator merely reduced the duration of an already imposed suspension (thereby implicitly finding "just cause" for *some* length of suspension), and those cases in which, after finding that no just cause existed for discharge, an arbitrator reduced the discipline to a qualitatively different form, such as suspension. PPL appears to argue that the latter remedy (*i.e.*, imposing a qualitatively different discipline) would be within the scope of arbitrator's authority, but the former remedy would not. However, PPL points to no authority supporting such a distinction. Moreover, courts have upheld arbitration awards that reduce the duration of a suspension imposed by an employer. *See Local 1478-2 Int'l Longshoremen's Ass'n v. Toyota Logistic Servs., Inc.*, No. 07-1952, 2008 U.S. Dist. LEXIS 2553, at *14, 18, 20-21 (E.D. Pa. Jan. 14, 2008) (upholding arbitration award reducing three-day suspension to one-day suspension).

[5] For PPL's argument that the Arbitrator improperly modified the terms of the CBA by reducing the severity of the discipline imposed upon finding that Mr. Gotzon committed misconduct, PPL relies solely on *Textile Workers Union of America, AFL-CIO, Local Union No. 1386 v. American Thread Co.*, 291 F.2d 894, 895 (4th Cir. 1961). In *American Thread*, the court concluded that the arbitrator exceeded the scope of the parties' submission, and violated the terms of the CBA, by interpreting the "just cause" provision to require reducing the discipline imposed from termination to suspension. *Id.* at 895, 899-900. Of course, *American Thread* is not binding on this Court, and PPL points to no controlling law within the Third Circuit holding that an arbitrator lacked authority to issue a remedy that

Additionally, there is evidence in the record to support the Arbitrator's findings, and therefore, no basis for the Court to disturb these findings. *Tanoma Mining Co., Inc.*, 896 F.2d at 748. For example, record evidence supports the Arbitrator's finding that troublemen routinely decline to start work on assignments that they could not complete before the end of their shifts, and that Mr. Gotzon's supervisor did not explicitly instruct Mr. Gotzon to work beyond the end of his shift in order to complete the "wire down" call.

Because the Arbitrator's decision can rationally be derived from the CBA, the Award "draws its essence" from the parties' CBA and will be upheld. *See Ludwig Honold Mfg. Co.*, 405 F.2d at 1128.

### IV.    CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is granted in its entirety. An appropriate Order consistent with this Memorandum follows.

---

reduced the severity of discipline imposed on an employee pursuant to a "just cause" provision. Accordingly, the reasoning and decision in *American Thread* is not persuasive.